J-S33009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | | |
| GARETH J. FERACIOLY | | |
| | Appellant | No. 912 WDA 2015 |

Appeal from the PCRA Order May 19, 2015
in the Court of Common Pleas of Butler County Criminal Division
at No(s): CP-10-CR-0001762-2006
CP-10-CR-0002004-2006
CP-10-CR-0002158-2006

BEFORE: GANTMAN, P.J., OLSON, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:            FILED: June 30, 2016

Appellant, Gareth J. Feracioly, appeals from the order entered in the Butler County Court of Common Pleas denying the fourth amendment of his first Post Conviction Relief Act[1] ("PCRA") petition.  We affirm.

A prior panel of this Court summarized the facts of three underlying criminal actions which were consolidated for appeal in this case as follows:

> **No. 1762 of 2006**
>
> [Appellant] was charged with two counts each of robbery, receiving stolen property, theft by unlawful taking, and recklessly endangering another person ("REAP"), and one count of possession of drug paraphernalia, in connection with two separate robberies committed on July 17, 2006 and July 22, 2006 at a 7-11 convenience store located on Route 228 in Cranberry,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

Pennsylvania. . . . On June 21, 2007, a jury found [Appellant] guilty of all charges. On September 11, 2007, [he] was sentenced to 12 to 30 months of imprisonment on the first count of robbery, with consecutive sentences of 24 to 64 months of imprisonment for the second count of robbery and one to two months of imprisonment for possession of drug paraphernalia, followed by an aggregate term of two years of probation. [Appellant] filed post-sentence motions which were denied. . . .

## No. 2158 of 2006

[Appellant] was charged with two counts each of robbery, terroristic threats, theft by unlawful taking, and receiving stolen property, and one count of possessing an instrument of crime in connection with the armed robbery of two cashiers on July 16, 2006 at a grocery store called the Prospect Corner Store, located in Butler, Pennsylvania. On October 18, 2007, a jury found [him] guilty of all charges. The trial court sentenced [Appellant] to 24 to 48 months of imprisonment for each of the robbery convictions, to be served consecutively, with no additional terms of incarceration for the remaining crimes. [Appellant] filed post-sentence motions which were denied. . . .

## No. 2004 of 2006

[Appellant] was charged with one count each of robbery, theft by unlawful taking, and receiving stolen property in connection with a robbery committed on July 19, 2006 at GlassMart, a gas station convenience store located in Butler, Pennsylvania. On September 27, 2007, a jury found [him] guilty of all charges. [On October 29, 2007, t]he trial court sentenced him to five to 20 months of imprisonment for robbery and imposed no further sentence on the remaining charges. [Appellant] filed post-sentence motions which were denied. . . .

*Commonwealth v. Feracioly*, 2213 WDA 2007, 2315 WDA 2007, 164 WDA 2008 (unpublished memorandum at 2-4) (Pa. Super. June 23, 2009) (footnotes omitted).

On January 16, 2008, Appellant filed notices of appeal, which were consolidated. This Court affirmed the judgment of sentence on June 23, 2009 in the consolidated appeals. *Id.* at 1. Appellant filed a petition for allowance of appeal on July 22, 2009. On December 2, 2009, the Pennsylvania Supreme Court denied the petition. ***Commonwealth v. Feracioly***, 985 A.2d 218 (Pa. 2009).

On December 2, 2010, counsel for Appellant filed three PCRA petitions. In case number 2004, Appellant raised the following issues regarding counsel's ineffectiveness:

> 1. Counsel failed to request a jury instruction concerning the voluntariness of the confession.
>
> 2. Counsel failed to properly preserve the argument that he was prejudiced at trial when the jury saw him in shackles and/or handcuffs.

PCRA Pet., 12/2/10, at 6 (unpaginated). Counsel requested to file an amended PCRA petition. *Id.*

In case number 1762, Appellant raised the following issues:

> 1. Counsel failed to request written statement of victim, Gina Chaney, when the police report given to counsel indicated that such a statement existed.
>
> 2. Counsel failed to properly preserve the discretionary aspects of sentencing issue on appeal in that the sentence was harsh.

PCRA Pet., 12/2/10, at 7 (unpaginated) (citation omitted). Counsel requested to file an amended PCRA petition. *Id.*

In case number 2158, Appellant raised the following issues:

1. Counsel failed to object to the testimony and evidence that [Appellant] was in custody at the time of his confession, although counsel did object to the testimony that [Appellant] was incarcerated in the Allegheny County Jail, counsel failed to continue to object that [Appellant] was incarcerated in the Allegheny County Jail **on other charges**.[2]

2. Counsel failed to properly raise the above issue to the appellate courts.

3. Counsel failed to argue to the appellate courts that the prosecutor's question concerning [Appellant's] prior interaction with the police was not relevant and highly prejudicial.

PCRA Pet., 12/2/10, at 6 (unpaginated) (citations omitted and emphasis added). Counsel requested to file an amended PCRA petition. *Id.*

On December 2, 2010, counsel filed a motion to consolidate the PCRA proceedings. The trial court granted the motion to consolidate the three cases. Order, 1/25/11.

On May 13, 2011, Appellant was granted leave to file an amended PCRA petition. Order, 5/13/11. On July 29, 2011, Appellant filed an Amended PCRA petition for all three cases. Appellant raised the following issues:

No. 2004 of 2006

---

[2] We note that the PCRA court observed in its opinion, "The Commonwealth correctly points out in its Brief Re: PCRA Petitions that [Appellant] has misstated the record in reference to this issue. At no time did Trooper [Randolph] Guy [("Trooper Guy")] testify nor did the prosecutor ask about [Appellant] being in the Allegheny County Jail on other charges." PCRA Ct. Op., 5/15/13, at 9.

- 4 -

I. Counsel gave ineffective assistance by failing to request a jury instruction concerning the voluntariness of the confession.

No. 2158 of 2006

I. Counsel gave ineffective assistance for failing to properly raise the issue that the trial court erred in allowing evidence that [Appellant] was incarcerated in the Allegheny County Jail on other charges to the appellate courts.

No. 1762 of 2006

I. Counsel gave ineffective assistance for failing to raise a discretionary aspect of sentencing issue on appeal in that the sentence was harsh.

II. Counsel gave ineffective assistance for failing to properly preserve a discretionary aspect of sentencing issue on appeal.

III. Counsel gave ineffective assistance for failing to fully and properly cross-examine the victim [Barbara Marshall ("Ms. Marshall")] as to the misidentification of the item that [Appellant] was carrying as a weapon.

PCRA Pet., 7/29/11, at 10.

On January 31, 2012, the PCRA court filed a Pa.R.Crim.P. 907 notice of intent to dismiss. On February 17, 2012, Appellant filed a response to the Rule 907 notice.[3] On the same date, Appellant filed a second amended

---

[3] In the response to the Rule 907 notice, Appellant also filed a motion for leave to filed an amended PCRA petition. **See** Response to Notice of Intention to Dismiss and Motion for Leave to File Amended PCRA Petition Pursuant to Rule 905(A) of the Pennsylvania Rules of Criminal Procedure, 2/17/12. We note that Appellant was not granted leave to file the second amended PCRA petition.

PCRA petition. In the second amended petition, Appellant raised the following issues:

> No. 2004 of 2006
>
> I. Counsel gave ineffective assistance for failing to request a jury instruction concerning the voluntariness of the confession.
>
> The relief requested for this claim is a new trial.
>
> No. 2158 of 2006
>
> I. Counsel gave ineffective assistance for failing to properly raise the issue that the trial court erred in allowing evidence that [Appellant] was incarcerated in the Allegheny County Jail on other charges to the appellate courts.
>
> The relief requested for this claim is a new trial.
>
> No. 1762 of 2006

---

In ***Commonwealth v. Porter***, 35 A.3d 4 (Pa. 2012), our Pennsylvania Supreme Court opined:

> Our procedural Rules contemplate that amendments to pending PCRA petitions are to be "freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A). And, it is true that Rule 905 does not explicitly distinguish between initial and serial petitions. . . . [T]he Rule explicitly states that amendment is permitted only by direction or leave of the PCRA court.

***Id.*** at 12. Instantly, Appellant complied with Rule 905(A). The second amended PCRA petition includes the requested relief for the issues raised. Generally, the same issues were raised in the prior petition. ***See infra.***

> I. Counsel gave ineffective assistance for failing to fully and properly cross-examine [Ms. Marshall] as to the misidentification of the item that [Appellant] was carrying as a weapon.
>
> The relief requested for this claim is a new trial.
>
> II. Counsel gave ineffective assistance for failing to fully and properly cross-examine [Ms. Marshall] as to the misidentification of the item that [Appellant] was carrying as a weapon because had counsel done this the Commonwealth could not enhance [Appellant's] sentence pursuant to the theory that [Appellant] possessed or used a weapon.
>
> The relief requested for this claim is the vacation of the sentence and a new sentencing hearing be conducted.
>
> III. Counsel gave ineffective assistance for failing to raise a discretionary aspect of sentencing issue on appeal in that the sentence was harsh.
>
> The relief requested for this claim is the vacation of the sentence and a new sentencing hearing be conducted.
>
> IV. Counsel gave ineffective assistance for failing to properly preserve a discretionary aspect of sentencing issue on appeal.
>
> The requested relief for this claim is the vacation of the sentence and a new sentencing hearing be conducted.

Second Am. PCRA Pet., 2/17/12, at 10-11.

On February 27, 2012, Appellant filed a supplement to the second amended PCRA petition pursuant to P.R.Crim.P. 902(A)(15).[4] On July 16,

---

[4] Rule 902(A)(15) provides:

2012, a PCRA hearing was held. On July 17, 2012, the PCRA court granted Appellant 60 days to file a brief in support of his PCRA petition. On September 17, 2012, Appellant filed a brief. On May 15, 2013, the PCRA court filed a Rule 907 notice of intent to dismiss. Appellant filed a motion to amend his PCRA petition on November 24, 2014.[5] The PCRA court granted the motion on December 3, 2014. On January 28, 2015, Appellant filed an amended PCRA petition, denominated his fourth amended PCRA petition. Appellant contended that he was entitled to relief under **Alleyne v. United States**, 133 S. Ct. 2151 (2013). Fourth Am. PCRA Pet., 1/28/15, at 10.

On April 20, 2015, the Commonwealth filed a response to the fourth amended petition. On April 24, 2015, the PCRA court filed a Rule 907 notice of intent to dismiss. On May 19, 2015, the PCRA court denied Appellant's

---

(A) A petition for post-conviction collateral relief shall bear the caption, number, and court term of the case or cases in which relief is requested and shall contain substantially the following information:

\* \* \*

(15) if applicable, any request for an evidentiary hearing. The request for an evidentiary hearing shall include a signed certification as to each intended witness, stating the witness's name, address, and date of birth, and the substance of the witness's testimony. Any documents material to the witness's testimony shall also be included in the petition[.]

Pa.R.Crim.P. 902(A)(15).

[5] The docket reflects no further activity between May 15, 2013 and November 24, 2014.

fourth amended PCRA petition. This timely appeal followed.[6] Appellant filed

a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on

appeal and the PCRA court filed a responsive opinion.

Appellant raises the following issues for our review in case number

1762:

> 1. Whether the PCRA court erred in concluding that trial
> counsel was not ineffective for failing to fully and properly
> cross-examine [Ms. Marshall] regarding the
> misidentification of the item Appellant was allegedly
> carrying as a weapon?
>
> 2. Whether the PCRA court erred in concluding that trial
> counsel was not ineffective for failing to challenge the
> discretionary aspects of Appellant's sentence in post-
> sentence motions or on direct appeal, as Appellant's
> sentence was overly harsh?
>
> 3. Whether the PCRA court erred in concluding that trial
> counsel was not ineffective for failing to challenge the
> application of the deadly weapon used and deadly weapon
> possessed sentencing enhancement when the evidence
> was inconclusive at best whether Appellant possessed a
> deadly weapon in the commission of the robbery?[7]

---

[6] Appellant filed the notice of appeal *pro se* on May 28, 2015, and it was
docketed on June 1, 2015. On June 1, 2015, counsel filed a motion for leave
to withdraw. On June 1, 2015, Appellant filed a motion for appointment of
counsel. The PCRA court granted the motion to withdraw on June 8, 2015,
and present counsel was appointed on June 11, 2015.

[7] Appellant, in support of this issue, states as follows:

> Appellant's third issue asserts that the PCRA court erred
> in concluding that trial counsel was not ineffective for
> failing to challenge the application of the deadly weapon
> used [sic] sentencing enhancement where the evidence
> was inconclusive at best that Appellant possessed a deadly
> weapon in the commission of the robbery at issue.

4. Whether the PCRA court erred in concluding that Appellant's sentence was not illegal under ***Alleyne v. United States***, [ ] 133 S. Ct. 2151 [ ] (2013)?[8]

Appellant's Brief at 5-6 (footnote omitted).

In case number 2004, Appellant raises the following issue:

1. Whether the PCRA court erred in concluding that trial counsel was not ineffective in failing to properly preserve and request a jury instruction relating to the voluntariness of Appellant's confession?

***Id.*** at 6.

In case number 2158, Appellant asks this Court to consider the following issue:

1. Whether the PCRA court erred in concluding that trial counsel was not ineffective for failing to preserve and argue on direct appeal that the trial court abused its discretion in permitting the jury to hear evidence that Appellant had been incarcerated in the Allegheny County Jail?

***Id.***

This Court has stated:

Our standard and scope of review for the denial of a PCRA petition is well-settled.

---

**Appellant submits that this issue is subsumed in issue 1 above**, and Appellant incorporates that argument as if set forth at length herein.

Appellant's Brief at 32-33 (emphasis added). Given our resolution of issue one, we need not address this issue. ***See infra.***

[8] Appellant withdrew this issue on appeal. Appellant's Brief at 33.

[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

\* \* \*

. . . Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, we have refined the [**Strickland v. Washington**, 466 U.S. 668 (1984),] performance and prejudice test into a three-part inquiry. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails. . . . To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

\* \* \*

[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it "could have reasonably had an adverse effect on the outcome of the proceedings."

**Commonwealth v. Charleston**, 94 A.3d 1012, 1018-19 (Pa. Super. 2014) (some citations omitted), *appeal denied*, 104 A.3d 523 (Pa. 2014).

"Furthermore, we note that we are bound by the PCRA court's credibility

- 11 -

determinations where there is record support for those determinations."

***Commonwealth v. Santiago***, 855 A.2d 682, 694 (Pa. 2004) (citation omitted).

In ***Commonwealth v. Howard***, 719 A.2d 233 (Pa. 1998), our Pennsylvania Supreme Court held that

> [g]enerally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. Trial counsel will not be deemed ineffective for failing to assert a claim that would not have been beneficial, or for failing to interview or present witnesses whose testimony would not have been helpful. Nor can a claim of ineffective assistance generally succeed **through comparing, by hindsight, the trial strategy employed with alternatives not pursued**.

***Id.*** at 237 (citations omitted and emphasis added).

First, in case number 1762, Appellant contends the PCRA court erred in concluding that trial counsel was not ineffective for failing to fully and properly cross-examine the victim regarding the misidentification of the item Appellant was allegedly carrying as a weapon. He "avers that trial counsel lacked any reasonable basis for failing to question Ms. Marshall as to whether the item she observed could have been something other than a weapon." Appellant's Brief at 27.

At trial, counsel cross-examined Ms. Marshall as follows:

> Q: This gun that you saw, can you describe it for us please?

A: All I can tell you is that it—in the left side there was a gun, and all I could really tell it was black.

Q: Are you familiar with handguns, ma'am?

A: Not real familiar, no.

\* \* \*

Q: And all you saw was the handle portion—

A: Yes.

Q: —of the—

A: Yes.

Q: —what you think was a gun, correct?

A: Yeah.

Q: How would you describe the holster? You said there was [sic] holster of some sort?

A: Well, it would be attached to your hip and it would be black.

\* \* \*

Q: So you couldn't see the barrel or the trigger, correct?

A: No, sir, I could not.

Q: Just the black handle?

A: Yes, sir.

Q: And at no time did [Appellant] place his hand on that handle?

A: No, sir.

Q: And for all you know, that handle, that item could have been a knife, correct?

A: Yes, sir.

N.T., 6/21/07, at 62-63.

At the PCRA hearing, trial counsel testified as follows.

[Counsel for Appellant]: Do you recall [Appellant's] case?

A: Yes, I do.

Q: Do you recall the fact that he had multiple cases?

A: I do.

Q: Do you recall the case with—the one case that they said he had a weapon?

A: Yes.

Q: And that was the only case that he had a weapon?

A: That he had a gun.

Q: Yes.

A: I believe there were three robberies in which he was alleged to have had a weapon. One robbery in which he was alleged to have a gun, if I'm not mistaken.

Q: And many of those robberies, after you were done with them, they were reduced down to felony three robberies, is that correct?

A: I believe at least one or two of the robberies that were originally charted as F ones were reduced down to F threes. . . .

\*   \*   \*

Well, there was an allegation I believe and I recall the Prospect Corner Store robbery he was alleged to have held a knife. And I believe there were two robberies of the 7-Eleven in Cranberry in which he was—the first robbery that

occurred in—allegedly occurred in—at that 7-Eleven, he was alleged to have carried or held a knife, if I'm not mistaken.

Q: Okay.

A: And the second alleged robbery that occurred at that 7—Eleven, he was alleged to have held or had a gun on his possession—in his possession.

Q: Are you aware of the case of Marshall—Barbara Marshall?

A: Yes.

Q: Where it was—and she indicated that she saw a handle of a gun?

A: Yes.

Q: I'm going to show you what's already been marked as Exhibit—PCRA Exhibit 2. Do you recall?

A: Yes. I do recall that drawing. That's a drawing that Ms. Marshall had prepared during her testimony.

Q: And that was of what, sir?

A: A.D.A. DeMarco had instructed Ms. Marshall to draw a gun.

\* \* \*

Q: And your—do you recall your cross-examination?

A: Somewhat, yes.

Q: Do you recall that you asked her whether she ever saw the gun be pulled out?

A: Yes, I believe I would have asked her that question.

Q: And do you recall that she said, no, it never was touched?

A: Yes, I do recall that.

Q: And that it was some kind of a handle on top of a holder?

A: Yes.

Q: And do you recall her testifying—or testifying that—after your questions, it could have been a knife?

A: Yes.

Q: And she said that?

A: Yes, she said it could have been.

Q: Now, you never asked a specific question as to could it have been a non-weapon?

A: I did not ask that question.

Q: Okay. All right. And subsequently, we have had Ms. Marshall testify under oath today, and she said that there is a 50 percent chance that it was—could have been a non-weapon. 50 percent chance that it could have been a weapon. Was there any reasonable strategy of why you did not ask that specific question?

A: The only thing I could say about that is **I do recall the two robberies that had occurred at the 7—Eleven were tried together**, if I'm not mistaken. And I believe there was testimony regarding the first robbery that occurred at that 7—Eleven that [Appellant] had a knife in his possessions [sic]. . . .

Q: Do you recall that the testimony may have been that the knife fell out?

A: Yes. . . . The knife that he possessed during the first 7—Eleven robbery had fell [sic] out of his holster or—

Q: Out of his pocket?

- 16 -

A: Pocket or whatever, yes. And my objective, if I may—was to do everything I could to make sure that [Appellant] was not convicted of the first degree robbery. Because if he had been convicted of a first degree robbery, robbery with a gun with the intent to—the robbery involving serious bodily injury, I knew he would be looking at possibly a five to 10—year mandatory. So, my number one objective was to make sure that [Appellant] was not convicted of the first degree robbery, robbery with the—a fear of serious bodily injury. I wanted him to avoid a five to 10—year mandatory. And I also wanted to maintain some credibility with the jury. And I felt that if—it would be easier to convince a jury that [Appellant] possessed a knife than it would be to convince the jury that he may have possessed, for example, a cell phone. Because my thinking, a knife handle is—more resembles a gun handle than a cell phone does.

* * *

And he was convicted of the F three regarding the first [7—Eleven] robbery and he was convicted of the F two regarding the second [7—Eleven] robbery.

Q: And you indicated that the knife was never used, you actually argued that to the jury?

A: Yes. . . .

N.T., 7/16/12, at 24-29, 31 (emphasis added).

The PCRA court opined:

At trial on June 21, 2007, during cross-examination of [Ms.] Marshall, the victim of the July 22, 2006 robbery, defense counsel . . . was successful in causing Ms. Marshall to concede that what she saw [Appellant] carrying in the holster on his left hip could have been a knife rather than a gun. [Appellant] complains that [counsel] should have asked [Ms. Marshall] if there was a possibility that the object she saw on [Appellant's] left hip could have been something other than a weapon. However, as pointed out by the Commonwealth, Gina Chaney, the victim of the July 17, 2006 robbery, had testified earlier that day at trial that

- 17 -

she saw a knife fall out of [Appellant's] pocket during the robbery.[9] Also, at trial, [Appellant's] confession of the July 22, 2006 robbery was introduced through Pennsylvania State Trooper Randolph Guy [("Trooper Guy")]. In the confession, [Appellant] stated that during that robbery he displayed a small metal bar to the clerk. It would have been disingenuous to the jury had [defense counsel] argued that the object on [Appellant's] left hip could have been a non-weapon or that ". . . it was more of a cell phone," as suggested by PCRA counsel.

* * *

Given Ms. Marshall's testimony up through trial, [counsel] had a reasonable basis for the strategy he employed in this trial. He was able to avoid the imposition of a five (5) year mandatory minimum sentence and achieved acquittals of two felony one robberies as well as a felony two robbery, thus reducing the severity of the guilty verdicts and the corresponding punishment.

PCRA Ct. Op., 5/15/13, at 3-4 (citations omitted).

The PCRA court found counsel to be credible and his strategy reasonable. *See Santiago*, 885 A.2d at 694. We agree that counsel's strategy was reasonable given the evidence adduced at trial. *See Howard*,

---

[9] Ms. Chaney testified to the following. She worked at 7—Eleven on Route 228, in Cranberry Township. N.T., 6/21/07, at 30. She worked the midnight shift on the day of the robbery. *Id.* at 31. She described what the "robber" did once she opened the cash register:

He took the cash out of the register, and as he was pulling the quarters out of the register **a knife fell out of his pocket**. He bent down and picked the knife up. Then he started pulling lottery tickets out because it's right there beside the register, and then he ran over and got cigarettes and ran out the door.

*Id.* at 35-36 (emphasis added).

719 A.2d at 237. Therefore, counsel was not ineffective. ***See Charleston***, 94 A.3d at 1018-19.

Next, Appellant argues trial counsel was ineffective for failing to challenge his sentence as unduly harsh and excessive on direct appeal. Appellant's Brief at 30. Appellant avers that

> at the time of sentencing, Appellant was already serving a sentence of ten (10) to twenty (20) years for robberies in Indiana County, and concurrent aggregate sentences of six (6) to twelve (12) years' incarceration for robberies in Allegheny County and three (3) to six (6) years' incarceration for an Armstrong County Robbery. At case No. 1762 of 2006, Appellant was sentenced to an aggregate term of three (3) years and one (1) month to eight (8) years' incarceration. However, the trial court sentenced [Appellant] to serve his incarceration in this matter consecutive to any other term he was serving.

***Id.*** at 30-31. Appellant claims "the sentence became especially harsh when it was consecutive to the prior sentences. Specifically, it would be almost ten years after sentencing before Appellant even began serving the instant sentence, resulting in a grossly disproportionate sentence to the crimes Appellant committed . . . ." ***Id.*** at 31-32. Appellant contends the sentence is unduly harsh and therefore the imposition of the consecutive sentence raises a substantial question and counsel was ineffective for failing to raise it in a post-sentence motion.[10]

This Court has stated that

---

[10] Appellant raised the issue on direct appeal and this Court found that it was waived for failure to raise it in a post-sentence motion or to the trial court during sentencing. ***See Feracioly***, 2213 WDA 2007, at 23.

[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right. Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006) (some citations omitted).

A claim of excessiveness can raise a substantial question as to the appropriateness of a sentence under the Sentencing Code, even if the sentence is within the statutory limits. ***Commonwealth v. Mouzon***, 812 A.2d 617, 624 (Pa. 2002). However, bald allegations of excessiveness do not raise a substantial question. ***Id.*** at 627.

> Generally, Pennsylvania law "affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time **or to sentences already imposed**. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." ***Commonwealth v. Pass***, 914 A.2d 442, 446–47 (Pa. Super. 2006). ***See also Commonwealth v. Hoag***, [ ] 665 A.2d 1212, 1214 (Pa. Super. 1995) (stating **appellant is not entitled to "volume discount" for his crimes** by having all sentences run concurrently). ***But see Commonwealth v. Dodge***, 957 A.2d 1198 (Pa. Super. 2008) [ ] (holding consecutive, standard range sentences on thirty-seven

> counts of theft-related offenses for aggregate sentence of 58 ½ to 124 years' imprisonment constituted **virtual life sentence** and, thus, was so manifestly excessive as to raise substantial question).

*Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (emphases added).

Appellant's sentence was not excessively and unduly harsh because it was consecutive to the prior sentences. Appellant is arguing for a volume discount by having his sentences run concurrently. *See id.* Therefore, trial counsel was not ineffective for failing to preserve a challenge to the discretionary aspect of Appellant's sentence because the underlying issue lacks merit. *See Charleston*, 94 A.3d at 1018-19.

In case number 2004, Appellant contends the PCRA court erred in concluding that trial counsel was not ineffective in failing to properly preserve and request a jury instruction relating to the voluntariness of Appellant's confession. Appellant's Brief at 33. Although counsel requested such an instruction following the trial court's jury charge, it was untimely. *Id.* at 35. Appellant avers that

> the evidence established that when Appellant confessed to the crime, Trooper Guy was aware Appellant was a heroin addict who used between 10 to 15 and 30 to 40 bags of heroin per day. Trooper Guy was also aware that at the time of the confession, Appellant had not used heroin for at least 24 hours. Moreover, Trooper Guy acknowledged it was possible that Appellant was suffering withdrawal symptoms at the time of the confession.

*Id.* Appellant contends that based upon this evidence, the instruction would

have been warranted. *Id.*

In *Commonwealth v. Gonzales*, 483 A.2d 902 (Pa. Super. 1984),

the

> [a]ppellant's counsel made his request for a justification
> instruction after the court completed its initial charge to
> the jury. However, the request was made in response to
> the court's inquiry: "Are there any other points that you
> wish to make with me or any exceptions to the points."
> This Court in *Commonwealth v. Marshall*, [ ] 417 A.2d
> 681 ([Pa. Super.] 1979) decided a similar issue. In
> *Marshall*, we held that although the rule[11] indicates a

---

[11] The *Gonzales* Court refers to Pa.R.Crim.P. 1119, which provided:

> (a) Any party may submit to the trial judge written
> requests for instructions to the jury. Such requests shall
> be submitted within a reasonable time before the closing
> arguments, and at the same time copies thereof shall be
> furnished to the other parties. The trial judge shall charge
> the jury after the arguments are completed, and shall then
> rule on all written requests.

*Id.* at 904. Rule 1119 was renumbered Pa.R.Crim.P. 647 and amended
March 1, 2000, effective April 1, 2001. Rule 647 provides, in pertinent part,
as follows.

> Any party may submit to the trial judge written requests
> for instructions to the jury. Such requests shall be
> submitted within a reasonable time before the closing
> arguments, and at the same time copies thereof shall be
> furnished to the other parties. Before closing arguments,
> the trial judge shall inform the parties on the record of the
> judge's rulings on all written requests and which
> instructions shall be submitted to the jury in writing. The
> trial judge shall charge the jury after the arguments are
> completed.

Pa.R.Crim.P. 647(B).

> clear preference for written requests, nothing in the rule itself bars a trial judge from entertaining oral requests for instructions. In ***Commonwealth v. Bishop***, [ ] 372 A.2d 794 ([Pa.] 1977), it was stated, "the provision permitting the submission of requested points for charge is not couched in mandatory terms, and a party is in no way bound by his failure to do so." [***Id.*** at] 796 n. 2[.] Accordingly, we find that the [a]ppellant's request for instructions was properly, and timely made. In addition, we note that the request was sufficiently explicit in its terms.

***Id.*** at 904-05.

After the trial court concluded its instructions to the jury, the court held a side-bar conference on the record. N.T., 9/27/07, at 117. The court asked defense counsel if he had "anything for the record a the [sic] this time?" Counsel for Appellant responded as follows. "Yes, Your Honor. It should have been brought out sooner. . . . [T]here is a specific instruction that instructs the jury as to how they are to evaluate confessions and the process for doing so." ***Id.*** at 117-18. The Commonwealth objected stating that

> [w]e're opposed to that. Had he brought it up at the time we would have addressed the issue within that instruction with Trooper [Randolph] Guy. We had a charge conference at noon and that wasn't addressed. We met again after lunch and it wasn't addressed.

***Id.*** at 118. The court denied the request. ***Id.*** Because counsel requested the instruction in response to the court's inquiry, we find that it was properly and timely made. ***See Gonzales***, 483 A.2d at 904-05.

- 23 -

Assuming, *arguendo*, the trial court would have granted the jury instruction request had it been made earlier, we consider whether Appellant was prejudiced. Appellant was required to demonstrate he was prejudiced by trial counsel's failure to request a jury instruction relating to the voluntariness of his confession. Where there is overwhelming evidence of guilt, trial counsel's ineffectiveness may fail the prejudice prong. ***Commonwealth v. Saranchak***, 866 A.2d 292, 301 (Pa. 2005).

A review of the record reveals the following. Carly Kinter testified that on the date of the incident she was working alone at the GlassMart. N.T. at 17.

> [The Commonwealth]: Can you tell me what you are referring to when you say the incident. . . .
>
> A: Um, I was alone in the gas station. A car had just pulled out from pumping gas. And I see someone come around the glass windows.
>
> \* \* \*
>
> He walked around the building. He was wearing sunglasses and it was nighttime.
>
> \* \* \*
>
> Q: . . . And when he came around the building wearing sunglasses, what did he do, did he enter your building?
>
> A: Yeah. He walked around the counter right at me.
>
> Q: When you say around the counter, where were you standing?
>
> A: Behind the counter.

Q: In the cash register area?

A: I was where the register was.

\* \* \*

Q: Where were his hands?

A: In his hoody pocket.

\* \* \*

Q: And as he comes back behind the register, does he say anything to you?

A: Yeah. He told me to open the register and then step back.

Q: And what if anything did you think at that time?

A: I knew I was being robbed. I was afraid.

\* \* \*

I didn't know what was in his pocket.

\* \* \*

He also told me to open the lottery drawer and get the money out for him.

\* \* \*

Q: Did you give him the money from the lottery?

A: Yeah. I was afraid not to.

Q: . . . What were you afraid would happen to you if you didn't?

A: I didn't know what he was capable of. I thought he might hurt me.

\* \* \*

Q: Did he take anything from the register?

A: He took all the money. . . .

\* \* \*

[H]e took a couple lottery tickets.

\* \* \*

Q: What did he do after he took the money and you gave him the other money and he took the lottery tickets?

A: He ran back around the counter and warned me not to call the comes [sic] for ten minutes. And then he ran out the building . . . .

\* \* \*

Q: Ma'am, the man who robbed you that night, do you see him in the courtroom today?

A: Uh-huh.

Q: And can you point to him and tell the jury what color his shirt is?

A: (Indicating) Green. The undershirt or the top shirt? Green Shirt.

Q: What's on top?

A: Black

[The Commonwealth]: We would like the record to reflect the witness has identified [Appellant].

N.T. at 17-21, 32.

Furthermore, on direct appeal, in all three cases, Appellant argued that the trial court erred by denying his motion to suppress the statements he made to the state police because he was not sufficiently in possession of his

mental and physical faculties to make a voluntary statement. ***Feracioly***, 2213 WDA 2007, at 6. He contended "at the time of the interrogation, he was suffering from heroin withdrawal and unable to knowingly waive his rights pursuant to ***Miranda v. Arizona***, [ ] 86 S. Ct. 1602 (1966)." ***Id.*** This Court opined:

> At the hearing on the motion to suppress, the investigating officer from the Pennsylvania State Police, [Trooper Guy] testified that he transported [Appellant] from Allegheny County to Cranberry Township for the purpose of interviewing [him] about the crimes at issue. N.T., 1/11/2007, at 12. Once in Cranberry Township but before questioning began, police read ***Miranda*** warnings to [Appellant] and he signed a form waiving those rights. ***Id.*** at 7-8.
>
> According to Trooper Guy, during the time period that [Appellant] was in his custody, [Appellant] was: (1) awake and alert, (2) neither appeared physically ill nor verbalized that he was sick, *i.e.*, [Appellant] was not sweating, shaking, or pale and did not complain of nausea, weakness or thirst, and (3) never told police that he was going through heroin withdrawal. Moreover, Trooper Guy testified that [Appellant] gave answers consistent with the questions asked and the evidence police had already obtained:
>
> > We specifically asked him about each and every robbery that we were investigating. And he gave a detailed account of each of those robberies including in some of them what he was wearing. Where he parked his vehicle. What kind of weapon or whether he had a weapon. He remembered details about the specific people working at the convenient [sic] stores or the establishments. He gave a very detailed account. Especially due to the number of robberies that he committed.
>
> ***Id.*** at 37-38.

* * *

> Upon review, the record supports the trial court's findings that [Appellant] was not subjected to police coercion and that he fully understood the rights he was waiving. He was read his ***Miranda*** rights and signed a waiver of those rights. In addition, the record evinces that [Appellant] was coherent and alert during the questioning, there was no physical indication of heroin withdrawal, and [Appellant] did not specifically alert police to his alleged condition. On these facts, we conclude that the waiver of ***Miranda*** and subsequent **police statements were given voluntarily and knowingly** and thus, were properly admitted.

***Id.*** at 8-10 (emphasis added and footnote omitted).

This Court found the underlying issue to be meritless.[12] ***See id.*** Therefore, counsel cannot be deemed ineffective. ***See Charleston***, 94 A.3d at 1018-19.

Lastly, in case number 2158, Appellant contends the PCRA court erred in concluding that trial counsel was not ineffective for failing to preserve and argue on direct appeal that the court abused its discretion in permitting the jury to hear evidence that Appellant had been incarcerated in the Allegheny County Jail. Appellant's Brief at 37.

> With regard to the revelation by the remarks that [the defendant] was incarcerated, although generally no reference may be made at trial in a criminal case to a defendant's arrest or incarceration for a previous crime,

---

[12] We note "[t]he [law of the case] doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in earlier phases of the matter." ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995).

there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged.

***Commonwealth v. Johnson***, 838 A.2d 663, 680 (Pa. 2003) (citation omitted). In ***Commonwealth v. Wilson***, 649 A.2d 435 (Pa. 1994),

the testimonial evidence in question "did not either expressly or by reasonable implication convey the fact of a prior criminal offense unrelated to the criminal episode for which [Appellant] was then on trial." ***Commonwealth v. Stoltzfus***, [ ] 337 A.2d 873, 881 ([Pa.] 1975). Accordingly, we must reject [the defendant's] claim that he was prejudiced by the introduction of other crimes evidence and that counsel was ineffective for failing to object to that evidence.

***Id.*** at 446.

In the case at bar, at trial, Trooper Guy testified that he interviewed Appellant at the Cranberry Township Police Department. N.T., 10/18/07, at 62. The Officer testified to the following.

[The Commonwealth]: And how did [Appellant] get to the Cranberry Township Police Department?

A: I transported him there.

Q: And were you alone or with another officer?

A: I was with another officer.

Q: And where did you get [Appellant] from?

A: The Allegheny County Jail.

***Id.*** The PCRA court found this issue to be meritless and opined: "At no time did Trooper Guy testify nor did the prosecutor ask about [Appellant] being in the Allegheny County Jail **on other charges**. The prosecutor

- 29 -

simply asked 'where did you get [Appellant] from?'" PCRA Ct. Op. at 9. We agree no relief is due.

This testimony did not convey the fact of a prior criminal offense. *See Johnson*, 838 A.2d at 680; *Wilson*, 649 A.2d at 446. Therefore, counsel was not ineffective for failing to preserve and argue on direct appeal that the court abused its discretion in permitting the jury to hear evidence that Appellant had been incarcerated in the Allegheny County Jail. *See Charleston*, 94 A.3d at 1018-19.

Accordingly, we affirm the order denying Appellant's fourth Amended PCRA petition.

Order affirmed.

Gantman, P.J. joins the Memorandum.

Olson, J. Concurs in the Result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2016